JOURNAL ENTRY AND OPINION
{¶ 1} Appellants, the mother and father of I.M., aka L.M.N., Jr., appeal the judgment of the Cuyahoga County Common Pleas Court, Juvenile Division, that granted permanent custody of their child to the Cuyahoga County Department of Children and Family Services.
 {¶ 2} The record reveals that I.M., aka L.M.N., Jr. (hereinafter referred to as "L.M.N.") was born on February 21, 2002 to the mother, who tested positive for cocaine. The Cuyahoga County Department of Children and Family Services ("CCDCFS") took emergency custody of L.M.N. on February 22, 2002 and contemporaneously filed a complaint for abuse, neglect and dependency. CCDCFS alleged that mother was drug-dependent and had three other children, G.S., M.M. and M.B, none of whom were in her custody. It further alleged that two of the children, M.M. and M.B., were in foster care under the temporary custody of CCDCFS while the other child, G.S., was in the legal custody of a relative. The father of L.M.N. is not the father of these children.
 {¶ 3} At the hearing that followed on February 27, 2002, the court found probable cause for the continued removal of L.M.N. and appointed counsel for both mother and father and a guardian ad litem for the child. The record indicates that both parents were personally served with notice of this hearing and were in attendance. A case plan was filed in April 2002, which addressed the agency's concerns relative to the parents' abuse of substances and lack of parenting skills. The agency had additional concerns about the mother's mental health, her lack of adequate housing and issues relative to domestic violence. Referrals for assessment and intervention were made.
 {¶ 4} As pertains to the mother, numerous referrals were made for drug assessment, psychiatric evaluation and parenting classes. Mother finally completed the drug assessment following her pregnancy with L.M.N.[1] but was unable to follow the recommendation for inpatient treatment because no facility was willing to take her due to frequent relapse. She was able to enter shelter care, however, which, according to the CCDCFS social worker, is "more or less a program to help her get into a drug treatment program." Mother, however, refused to sign a release for the social worker to obtain any information about her progress in this program. Mother made no attempt to complete the psychiatric evaluation or attend parenting classes. Similar referrals for domestic violence intervention went unheeded.
 {¶ 5} Father, on the other hand, was to complete parenting classes and submit periodic urine samples to monitor his drug use. He followed through on neither of these recommendations, although he testified that he attended, but did not complete, parenting classes at a facility different than that scheduled by CCDCFS. He did not, however, produce any documentation of such attendance. Additionally, a visitation schedule was established so that the parents could visit with L.M.N. on a weekly or bi-weekly basis. According to the social worker's testimony, both parents visited rarely or not at all.
 {¶ 6} An adjudication hearing took place on December 16, 2002. Although mother was present with her counsel, father was not present but his counsel was present. The record indicates that father was serving a ten-month prison sentence for possession of drugs and breaking and entering, a sentence which began in October 2002. The transcript of these proceedings does not indicate that the court or father's counsel were aware of father's conviction and subsequent sentence. CCDCFS moved to amend the complaint and, as amended, mother entered an admission to the allegations contained therein. After hearing testimony from the CCDCFS social worker regarding the father's failure to adhere to the recommendations contained in the case plan, the trial court adjudicated L.M.N. a neglected and dependent child.[2]
 {¶ 7} The dispositional hearing took place on February 7, 2003. This time, father[3] and his counsel were present but mother was not present though duly notified. Mother's counsel was present, however, as was the guardian ad litem. After hearing testimony from the social worker and the father, the court granted permanent custody of mother's other child, M.M., to CCDCFS but deferred its ruling on L.M.N. The court eventually granted permanent custody of L.M.N. to CCDCFS.
 {¶ 8} Mother and father are now both before this court, assigning a total of seven errors for our review. Father assigns three procedural errors, which we will address first. His fourth and fifth assignments of error are primarily substantive and will be discussed with mother's two assignments of error, both of which are substantive.
 I. Procedural Issues A. Improper Summons {¶ 9} Father contends in his first assignment of error that CCDCFS's complaint for permanent custody did not comply with R.C.2151.414(A)(1) in that the complaint failed to notify him that he may be divested of his parental rights. CCDCFS argues that this statutory provision is only controlling on a motion for permanent custody, not a complaint.
 {¶ 10} CCDCFS is correct. R.C. 2151.414 governs procedures upon amotion for permanent custody. Subsection (A)(1) of that statute provides that a court "shall schedule a hearing and give notice of the filing of the motion * * *." The notice "shall contain a full explanation that the granting of permanent custody permanently divests the parents of their parental rights * * *." Id. Procedures upon a complaint for permanent custody, on the other hand, are generally governed by R.C. 2151.353. Notwithstanding, subsection (B) of this statute contains a similar notice requirement and provides, in relevant part:
 {¶ 11} "No order for permanent custody * * * shall be made pursuant to this section unless the complaint alleging the abuse, neglect, or dependency contains a prayer requesting permanent custody, * * * the summons served on the parents of the child contains * * * a full explanation that the granting of an order for permanent custody permanently divests them of their parental rights * * *."
 {¶ 12} Father conceded at oral argument that if the record contained such a notice, then this assignment of error must necessarily fail. Our review of the record reveals that such a notice was personally served on both parents and contained the necessary information required by this statute. Consequently, father's first assignment of error is not well taken and is overruled.
 B. Improper Notice {¶ 13} In his second assignment of error, father contends that he was denied due process of law when he was not properly notified of the adjudicatory hearing. CCDCFS maintains that father failed to appeal the adjudication order and cannot now raise that error for this court's review. We agree.
 {¶ 14} An adjudication of neglect or dependency is a final order capable of immediate review. In re Murray (1990), 52 Ohio St.3d 155,161; see, also, In re Michael A. (Mar. 21, 2002), Cuyahoga App. No. 79835, 2002 Ohio App. Lexis 1272. Failure to timely challenge an order of adjudication divests a reviewing court of jurisdiction to consider any error raised in a subsequent appeal. Id.
 {¶ 15} The order adjudicating L.M.N. neglected and dependent was journalized January 8, 2003. Father had 30 days from that date to appeal any error associated with that order and failed to do so. See App.R. 4(A). It is true that father was incarcerated at the time of adjudicatory hearing. He was represented by counsel, however, and the record reveals that he received notice not only of the adjudicatory hearing but the decision rendered as a result of that hearing as well. Indeed, through counsel, father requested permission to attend the dispositional hearing. At no time did either father or his counsel challenge the order adjudicating L.M.N. neglected and dependent within the time allowed by the appellate rules. He cannot now, on appeal of an order awarding permanent custody, challenge that order.
 {¶ 16} Father's second assignment of error is not well taken and is overruled.
 C. Deficiencies in Complaint {¶ 17} Father contends in his third assignment of error that he was deprived due process of law because the complaint for permanent custody failed to set forth allegations in compliance with R.C. 2151.414(B). CCDCFS maintains that father has waived this error by failing to raise it in the court below as required by Juv.R. 22(D).
 {¶ 18} Juv.R. 22 governs pleadings and motions, as well as the defenses and objections thereto. Subsection (D), in particular, provides that any defects in the complaint be raised before the adjudicatory hearing by motion. See Juv.R. 22(D) ((2).
 {¶ 19} Father at no time raised any objection to the complaint as served upon him. Indeed, he was personally served with the complaint and summons and appeared in court on February 27, 2002 and April 8, 2002. Although duly notified of hearings to take place on April 24, 2002, June 27, 2002, July 30, 2002, August 27, 2002 and October 28, 2002, father did not appear.[4] Father's counsel appeared at all these hearings except one. Temporary custody was continued at each of these hearings and an adjudicatory hearing was scheduled for December 16, 2002. The record is devoid of any objection to the sufficiency of the complaint during this 10-month time period. Consequently, father cannot now challenge the sufficiency of the complaint.
 {¶ 20} Even if he had raised the issue in the trial court, we would not find any error. R.C. 2151.27 sets forth the requirements for the filing of a complaint in juvenile court. As is pertinent to this case, the "complaint shall allege the particular facts upon which the allegation that the child * * * is a * * * neglected, or dependent child is based." Moreover, the complaint "shall contain a prayer specifically requesting permanent custody" if that is the relief sought by the complainant. See, also, R.C. 2151.353(B); Juv.R. 10(D).
 {¶ 21} The complaint in this case alleged, inter alia, that (1) L.M.N. was born while his mother tested positive for cocaine; (2) mother had a drug problem that prevented her from providing proper care for this child; (3) mother had other children in the temporary custody of CCDCFS or in the legal custody of a relative; (4) mother failed to comply with the agency's case plan; and (5) father failed to provide care or support for L.M.N. Moreover, the complaint sought an award of permanent custody to CCDCFS. Consequently, the complaint complied with the requirements of R.C. 2151.27, 2151.353 and Juv.R. 10. Contrary to father's assertions, there is no requirement that the complaint allege any facts to satisfy R.C. 2151.414(B)(1)(a) through (d) or R.C. 2151.414(B)(2).
 {¶ 22} Father's third assignment of error is not well taken and is overruled.
 II. Substantive Issues A. Manifest Weight of the Evidence {¶ 23} Mother, in her first assignment of error,[5] and father, in his fifth assignment of error, argue that the trial court's decision awarding permanent custody to CCDCFS is against the manifest weight of the evidence. Somewhat related is father's fourth assignment of error, which claims that the trial court failed to make certain findings required by statute before making an award of permanent custody.
 {¶ 24} If a child is adjudicated as an abused, neglected or dependent child, a trial court may commit that child to the permanent custody of a public children services agency after determining that the child cannot be placed with either of the child's parents within a reasonable time in accordance with R.C. 2151.414(E) and that such a commitment is in the best interest of the child in accordance with R.C.2151.414(D). See R.C. 2151.353(A)(4).
 {¶ 25} In determining whether a child cannot be placed with either parent within a reasonable period of time, the court shall consider all relevant evidence. It must then determine, by clear and convincing evidence, that one or more of the factors contained in R.C. 2151.414(E) exists and enter a corresponding finding that the child cannot be placed with either parent. It appears from the record that the court found subdivisions (E)(1) and (4) relevant. R.C. 2151.414(E)(1) is directed at a parent's failure to remedy the problems leading to the removal of the child from the home while subdivision (E)(4) pertains to a parent's lack of commitment to the child by failing to support, visit or communicate with the child. In determining the best interest of the child, R.C.2151.414(D) provides a non-exhaustive list of factors that the court must consider. These include (1) the child's interaction and interrelationship with, inter alia, the child's parents, siblings, relatives and foster caregivers; (2) the child's wishes expressed directly or through a guardian ad litem; (3) the child's custodial history; (4) the child's need for legally secure permanent placement and if that type of placement can be obtained without granting permanent custody to CCDCFS; and (5) whether any factors listed in R.C. 2151.414(E)(7) to (11) apply. See R.C. 2151.414(D)(1) through (5).
 {¶ 26} Father contends that the trial court failed to make the necessary findings required by these statutes before it awarded permanent custody to CCDCFS. In particular, father argues that the judgment entry is deficient on its face because it does not address the factors set forth in R.C. 2151.414(D) and (E). We disagree.
 {¶ 27} R.C. 2151.414(D) requires the court "consider all relevant factors" as set forth in this subsection. R.C. 2151.414(E), on the other hand, requires that the court to "consider all relevant evidence" before determining that one or more of the conditions exist as set forth in this subsection before it enters a finding that the child cannot be placed with either parent. The statute does not require the court to list those factors or conditions it found applicable before making its determination that the child cannot be placed with either parent or that the permanent custody is in that child's best interest. In its journal entry granting permanent custody to CCDCFS, the court made a finding that L.M.N. could not be placed with either parent and then ostensibly listed its reasons to support that finding. Father could have requested a written opinion that set forth the court's findings of fact and conclusions of law as authorized by R.C. 2151.353(A)(4) upon the court's grant of permanent custody, but did not do so. Absent such a request and as long as the record supports the court's decision, the trial court was not required to journalize an entry that demonstrates that it considered statutory factors or evidence to support those factors before making a finding that the child could not be placed with either parent and that permanent custody is in the child's best interest.
 {¶ 28} The evidence in this case indicates that mother and father failed to follow through with the recommendations made by CCDCFS. Mother not only failed to attend classes to improve her parenting skills or to remedy issues relative to domestic violence, but similarly failed to complete a psychological evaluation. More importantly, mother did not comply with recommendations to seek treatment for her substance abuse. It is true that she did attend a shelter care program with the objective of obtaining inpatient treatment. However, she delayed assessment and subsequent entrance into this program because she admitted she was still using drugs. She has yet to be accepted into a treatment program because of her history of relapse.
 {¶ 29} Father similarly failed to complete parenting classes. It is true that he testified that he attended parenting classes at a facility other than that recommended by CCDCFS. He admitted, however, that he did not complete the program. Furthermore, there was no documentation presented that indicated that he even partially attended parenting classes. Father admitted that he failed to follow through with recommendations for a drug and alcohol assessment and for periodic drug screening. Indeed, during the pendency of this case, father was convicted and incarcerated for possession of drugs, among other things.
 {¶ 30} The evidence also indicates that mother and father are less than committed to L.M.N. Their interaction with the child has been minimal. Since May 2002, mother visited with L.M.N. only twice, although bi-weekly visits had been arranged by CCDCFS. Although father testified that he attempted to or did visit with the child more frequently, the visitation record documents only one visit since CCDCFS obtained custody.
 {¶ 31} Certainly it would be understandable if exigent circumstances prevented either parent from visiting the child. According to the testimony of the social worker, however, mother claimed that she "didn't have time." Indeed, mother did not even appear at the dispositional hearing though duly notified. To be sure, father was serving a ten-month prison sentence, which began in October 2002, that prevented his visitation at least from that time forward. Nonetheless, father only visited with L.M.N. once in the preceding eight-month interval between the child's birth and father's incarceration. One or two visits over such a time period militates against establishing a strong and healthy relationship with L.M.N., especially when mother and father had the opportunity to visit on a regular basis and chose not to do so.
 {¶ 32} On the contrary, the evidence indicates that L.M.N.'s interaction and relationship with his current foster caregiver has been exemplary. L.M.N. has been in the home of the foster caregiver, who also cares for L.M.N.'s half-sibling, M.M., since his birth. According to the child's guardian ad litem, L.M.N. is doing very well in his current placement — he is in good health and receives good care. The foster caregiver has expressed interest in adopting L.M.N. and his half-sibling.
 {¶ 33} The evidence supports that mother and father have been given several opportunities to remedy their situation and have only minimally complied, if that. L.M.N. is thriving in his current environment, an environment that includes a half-sibling. Accordingly, we find that there existed clear and convincing evidence justifying the grant of permanent custody to CCDCFS. As stated above, the record is replete with the agency's efforts at implementing its case plan and the parent's lack of compliance with that plan. Their lack of compliance militates against the return of L.M.N. to their care within a reasonable time. It was, therefore, in the child's best interest for CCDCFS to have permanent custody.
 {¶ 34} Mother's first assignment of error and father's fourth and fifth assignments of error are not well taken and are overruled.
 {¶ 35} Notwithstanding our conclusion above, we are troubled by the journal entry granting permanent custody to CCDCFS. Although neither party requested findings of fact and conclusions of law as authorized by R.C. 2151.353(A)(4), the court, nonetheless, stated its reasons for finding clear and convincing evidence that L.M.N. could not be returned to either parent. Those reasons mirrored the allegations contained in the complaint originally filed by CCDCFS. However, that complaint was amended prior to the adjudicatory hearing to reflect (1) the correct name of the child; (2) deleted numbered paragraphs three and four of the original complaint, which referenced mother's mental health history and that another child had died in her care; (4) clarified the current placement of mother's other children; (5) identified the father by name; and (6) modified mother's level of compliance with the agency's case plan. Even as amended, the complaint continues to refer to father as the "alleged father" when the testimony at both hearings indicated that a parent-child relationship had been established between L.M.N. and father. Consequently, no evidence, let alone that of the clear and convincing kind, was presented that would support some of the reasons that the trial court ostensibly listed as the basis for concluding as it did.
 {¶ 36} Nonetheless, several allegations contained in the original complaint were also contained in the amended complaint, proof of which would support the trial court's conclusion. These include (1) the child's date of birth and that mother tested positive for cocaine at the time of that birth; (2) that mother has a drug abuse problem that prevents her from properly caring for her child; (3) that mother has three other children, none of whom are now in her care; (4) that father has failed to provide care or support to the child; and (5) that mother has not complied with the agency's case plan. Because there was clear and convincing proof to support those allegations, we cannot say that the trial court erred in finding that L.M.N. could not be returned to either parent in a reasonable time.
 {¶ 37} We are aware of the heavy docket and time constraints that face the juvenile court and its personnel on a daily basis, not to mention the emotional turmoil it faces when dealing with issues such as termination of parental rights. However, these are important issues requiring a careful attention to detail that we find lacking in this case. We note that the trial court issued a nunc pro tunc entry, which cured the obvious clerical errors contained in the original entry so as to reflect what actually occurred at the hearing. Similarly the court, or any of the plethora of attorneys affiliated with this case, should have realized that the journal entry issued was not, in part, consistent with what occurred at the dispositional hearing and taken appropriate action to correct the record.
 B. Alternate Disposition {¶ 38} Mother contends in her second assignment of error that the trial court erred in not ordering a disposition for a planned permanent living arrangement ("PPLA").
 {¶ 39} R.C. 2151.353 governs the disposition of abused, neglected or dependent children and provides that when a child is adjudicated as such, the court may make one of several orders, which include, in part, granting permanent custody under subsection (4) as discussed in Section I(A) or placing the child in a PPLA under subsection (5). See R.C.2151.353(A). In a PPLA, the juvenile court grants a children services agency legal custody of a child without terminating the parent's parental rights. R.C. 2151.011(B)(36). A PPLA is only appropriate if the court finds by clear and convincing evidence that it is in the best interest of the child and one of the following exists: (1) the needs of the child require that the child remain in residential or institutional care: (2) the parents have significant physical, mental or psychological problems that prevent them from caring for the child, adoption is not in the best interest of the child and the child retains a significant and positive relationship with a parent or relative; and (3) the child is 16 years of age or older and unable or unwilling to adapt to a permanent placement, inter alia.
 {¶ 40} Mother, relying on In re Campbell (Oct. 27, 2000), Cuyahoga App. Nos. 77552 77603, 2000 Ohio App. Lexis 4787, urges this court to find that a PPLA is a better disposition because she has "a strong affinity" for L.M.N. and has made advances toward obtaining custody. Indeed, mother asserts that she "is building on her parenting and social skills" and soon will be, if not already, "sufficiently equipped to resume parenting full time." Moreover, mother claims to have her psychological problems "under control" and has "steadfastly denied future involvement with drugs and alcohol." Mother cites no evidence in the record to support these contentions, other than unauthenticated letters that she apparently authored or authored by others. Reiterating, mother did not attend the hearing although duly notified.
 {¶ 41} CCDCFS, on the other hand, urges this court to revisit our earlier decision in Campbell. In particular, CCDCFS disagrees withCampbell to the extent that it viewed a PPLA disposition as a "middle ground" between permanent custody to the agency and reinstating custody to a parent, an approach to disposition that the Campbell court apparently did not want to discourage. See Campbell at *16; see, also, Inre Nickol (Oct. 18, 2001), Cuyahoga App. Nos. 78701 78742, 2001 Ohio App. Lexis 4658. CCDCFS refers us to the enabling legislation, the Adoption and Safe Families Act of 1997 ("ASFA"), Pub.L. 105-89,111 Stat. 2115,[6] which amended several provisions in existing federal law[7] that set the standards a state must meet in order to qualify for federal funding for ongoing foster care, transitional living for older foster children and other programs necessary for the dependency system to operate. The Act emphasizes the protection of children against abuse as well as providing a permanent placement in a nurturing home at the earliest possible point in time. "[C]hild welfare agencies * * * must make reasonable efforts not only to preserve families, but also to move children to permanency when preservation is not appropriate." Bartholet, Taking Adoption Seriously: Radical Revolution or Modest Revisionism? (1999), 28 Cap. U.L.Rev. 77, 85.
 {¶ 42} The law's intent is to solve problems associated with prolonged stays in foster care that deprive children "of the permanency of family and, in many cases, subject them to further emotional and developmental risk." Freundlich, Expediting Termination of Parental Rights: Solving a Problem or Sowing the Seeds of a New Predicament? (1999), 28 Cap. U.L.Rev. 97, 110.
 {¶ 43} In March 1999, Ohio adopted its version of ASFA when Am.Sub.H.B. 484 became effective through the efforts of the 122nd
General Assembly. "Ohio's Act, like the federal one, mandates that courts consider what is in the best interests of the child when making dispositional[8] orders in dependency and neglect cases * * * [and] requires that the child's health and safety be considered paramount when determining whether an agency has made reasonable efforts to reunify a family." Lundberg Stratton, Expediting the Adoption Process at the Appellate Level (1999), 28 Cap. U.L.Rev. 121, 123. Although the emphasis remains on establishing permanency in placement, a juvenile court has the discretion to make an award of disposition that does not permanently divest parents of their parental rights. See, e.g., R.C. 2151.353 and2151.415. One of these options is the PPLA.
 {¶ 44} Reviewing the history behind these statutes, we find CCDCFS's argument to be primarily semantic. The state relies on a report from the Congressional Research Service, which refers to the PPLA as a permanency goal of "last resort." See K. Spar, Congressional Research Service Report for Congress, Adoption Promotion Legislation in the 105th Congress, 97-491 EPW, (Nov. 24, 1997). "The law revises the list of permanency goals (which had included long-term foster care) to include returning home, referral for adoption and termination of parental rights, guardianship, placement with a relative, or, as a last resort, another planned, permanent living arrangement." Id. at CRS-4. These "permanency goals" are no different than alternatives for disposition available to the trial court as set forth in R.C. Chapter 2151. Although the Campbell court may have referred to the choices available to the trial court as a "middle ground," we find its conclusion to be statutorily based.
 {¶ 45} Be that as it may, we find Campbell distinguishable in this case. The trial court in Campbell was faced with arguments from the parties urging the court to choose permanent custody or a PPLA. Evidence was presented as to the parent's relationship with the children and her attempts and progress at overcoming the problems identified by the agency. These are not present in the case before us. First, the parties did not argue for, nor did the court suggest, an alternate disposition. CCDCFS sought permanent custody and mother sought to have custody reinstated to her. Secondly, and more importantly, there was no evidence presented that would indicate that a PPLA disposition would be in the child's best interests or that one of the factors listed in R.C.2151.353(A)(5)(a) through (c) existed. L.M.N. was not yet 16 years old, so subsection (A)(5)(c) would not have applied. There was no evidence to suggest that L.M.N. suffered from any physical, mental or psychological problems or needs that would make subsection (A)(5)(a) applicable. Likewise, there was no evidence presented that would suggest that adoption was not in the best interest of L.M.N because of mother's physical, mental or psychological problems nor any evidence to suggest that mother retains "a significant and positive relationship" with the child that would make subsection (A)(5)(b) applicable.
 {¶ 46} R.C. 2151.353 is discretionary in that it gives the trial court several options when dealing with children adjudicated as abused, neglected or dependent. See, also, Juv.R. 34(D). In this case, it exercised that discretion in finding it in L.M.N.'s best interest to award permanent custody to CCDCFS in accordance with R.C. 2151.353(A)(4). A juvenile court's exercise of discretion should be accorded "the utmost respect," taking into account that the knowledge gained "through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record." Reynolds v. Goll
(1996), 75 Ohio St.3d 121, 124.
 {¶ 47} Mother's second assignment of error is not well taken and is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellants costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sean C. Gallagher, J., concurs.
James J. Sweeney, P.J., Concurs in Judgment only.
[1] According to the social worker's testimony, mother did not think it was fair that she submit to a drug assessment during her pregnancy when she was still using drugs.
[2] At this hearing, disposition was made concerning one of mother's other children, M.B., who was already in the temporary custody of CCDCFS. The court awarded legal custody to that child's father. Disposition of L.M.N. and mother's other child in the temporary custody of CCDCFS, M.M., was continued.
[3] Father requested and was granted permission to attend the hearing. It appears that he served a period of incarceration and was released to boot camp. It was from that facility that he was able to attend the hearing.
[4] It should be noted that the journal entry associated with the October 28th hearing indicates that father was present. The transcript of the December 16th adjudicatory hearing, however, indicates otherwise. Moreover, it appears that father was incarcerated just prior to the October hearing, making his attendance unlikely.
[5] Mother appears to challenge the court's decision to remove all three of her children from her care. Mother, however, only appealed the judgment regarding the disposition of L.M.N. Mother failed to file an appeal from the judgments affecting the disposition of her other children. As such, we are confined to the record before this court; namely, the record concerning L.M.N.
[6] Codified as amended in scattered sections of Title 42, U.S. Code.
[7] The Adoption Assistance and Child Welfare Act of 1980, Pub.L. No.96-272, 94 Stat. 500 (codified as amended in scattered sections of Title 42, U.S. Code).
[8] The federal act replaces the term "dispositional" with "permanency." See 1997 amendments to Section 675(5)(C), Title 42, U.S. Code. Ohio's version, by contrast, still refers to its placement hearings as "dispositional" in nature.