JOURNAL ENTRY AND OPINION
{¶ 1} Appellant A.B.[1] ("Mother") appeals from a decision of the Cuyahoga County Court of Common Pleas Juvenile Division, which granted permanent custody of her four children ("the children") to the Cuyahoga County Department of Children and Family Services ("CCDCFS"). On appeal, A.B. complains that the court should not have granted CCDCFS permanent custody of her children, alleging the children should have been placed with her or in a Planned Permanent Living Arrangement ("PPLA") instead. After reviewing the record, we conclude the trial court did not abuse its discretion and affirm the judgment of the trial court.
 {¶ 2} On June 21, 2002, CCDCFS removed the children from the custody of A.B. upon a complaint of neglect and dependency. At the time of the removal, A.B. was incarcerated on a probation violation for testing positive for illegal drugs. The children were placed into the home of V.M., the paternal grandmother. A case plan was instituted at that time for purposes of pursuing reunification of the minor children with their mother. On January 22, 2003, CCDCFS filed a motion seeking permanent custody of the children.
 {¶ 3} On April 9, 2003, A.B. admitted to the allegations of the complaint and the children were adjudicated neglected and dependent.
 {¶ 4} On September 9, 2003, the dispositional hearing began and testimony was heard from several witnesses. First, CCDCFS social worker Patrina Clark testified that she became involved with A.B. and the children in July 2002 after the children were removed from the custody of A.B. because of her incarceration for drug use. She testified that three of the children had previously been removed from A.B. in April 1999 because of the mother's drug use and mental health issues. She testified that she developed a case plan for A.B., which included substance abuse treatment, appropriate housing, stable employment, and mental health treatment. She testified that A.B. completed the drug assessment and was currently in an aftercare program, although she had failed to provide any documentation of her progress there. She testified that although A.B. had obtained appropriate housing for her young children, she had not obtained stable employment nor addressed her mental health issues. She also testified that she has been unable to witness the interaction between A.B. and her children because A.B. either cancels or comes late for the supervised visits. Finally, she testified that the children are doing well in their placement with the paternal grandmother.
 {¶ 5} V.M., the paternal grandmother of two of the children, testified that all of the children have been in her care since June 2002. She also testified that three of the children had previously been removed from the mother and placed in her care from April 1999 to June 2000. She testified that A.B.'s visitations were irregular and inconsistent. She stated that the children were happy living with her and were doing well in school. She also stated that she would be interested in adopting the children if they were removed from the mother permanently.
 {¶ 6} A.B. thereafter testified on her own behalf and presented testimony from Kasana Thomas and Linda Clark. A.B. admitted that she had drug problems in the past but that she had been drug free since December 2002. She testified that she was prescribed medication for depression but was not taking it because she was pregnant. She testified that she was living in a four-bedroom house and was trying to find a job. She stated that she had a good relationship with her children and that they are her "world." She testified that she does not get along well with V.M. and that she sometimes prevented her from seeing the children.
 {¶ 7} Kasana Thomas testified that she and A.B. are childhood friends. She stated that she observed A.B. with her children on two occasions and that the children were happy and appeared to love A.B. very much.
 {¶ 8} Linda Clark, the property manager for the housing development that A.B. lives in, testified that she helped A.B. obtain housing and was trying to help her get a job with the Park Program.
 {¶ 9} After closing arguments were heard, the guardian ad litem for the children filed a written report, which recommended that the children be placed in the permanent custody of CCDCFS and remain in the care of V.M.
 {¶ 10} On September 19, 2003, the court granted permanent custody of the four children to CCDCFS. A.B. appeals from that decision and raises two assignments of error for our review.
 {¶ 11} "I. Whether the trial court erred when it granted the motion for permanent custody."
 {¶ 12} In her first assignment of error, A.B. contends that the trial court abused its discretion when it granted permanent custody of her children to CCDCFS in the absence of clear and convincing evidence and when it determined that her children could not be placed with her in a reasonable amount of time. CCDCFS maintains the court did not abuse its discretion when it determined the best interest of the children would be served by granting CCDCFS permanent custody. The issue presented here concerns the permanent custody of the children.
 {¶ 13} In considering an award of permanent custody, the court must first determine whether, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody. R.C. 2151.414(D). In determining the best interest of the child during the permanent custody hearing, the court must consider the factors listed in R.C. 2151.414(D), which include the reasonable probability the child will be adopted, the interaction of the child with the child's parents, siblings, and foster parents, the wishes of the child, the custodial history of the child, and the child's need for a legal secure permanent placement.
 {¶ 14} Here, the record reveals that A.B. has a prior history with CCDCFS. Three of her children had previously been removed from her care. Although the children were reunited with their mother for a period of time, all four children were again adjudicated neglected in 2002, the subject of this appeal. The children have lived with V.M. since June 2002. Three of the children, in fact, have lived with V.M. off and on for most of their lives. All of the children have developed a close bond to V.M. and are developing normally for their age. V.M. has expressed an interest in adopting the children. Finally, the guardian ad litem recommended that permanent custody be granted. Accordingly, there is clear and convincing evidence that supports the trial court's determination that permanent custody is in the best interest of the children.
 {¶ 15} In addition to determining the child's best interest, the court must make a second determination before granting permanent custody: it must determine whether the child can be placed with a parent within a reasonable time or should not be placed with the parent. R.C. 2151.414(B)(1)(a). The court is required to enter a finding that the child cannot be placed with a parent within a reasonable time if any factors set forth in R.C. 2151.414(E) apply, including the following:
 {¶ 16} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 17} "* * *
 {¶ 18} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child; * * *."
 {¶ 19} Here, the trial court enumerated R.C. 2151.414(E)(1) and (4) as applicable to the children. First, the trial court found that the parents had demonstrated a lack of commitment toward the children by failing to regularly support, visit, or communicate with the children when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the children. The evidence at trial showed that A.B. had liberal visitation arrangements to see her children, but was often late or failed to show up for a visit. The social worker stated that A.B. did not visit her children from the time they were taken into custody in June 2002 until October 2002, although A.B. testified at trial that she did see the children during this time. The trial court was free to believe the State's witnesses over A.B.'s own testimony. Finally, at the time of trial, A.B. had not seen the children in over a month.
 {¶ 20} The trial court also found that A.B. had failed continuously and repeatedly to substantially remedy the conditions causing the children to be removed from the home. Specifically, the court found that A.B. failed to comply with the case plan. At the time of trial, A.B. had obtained appropriate housing and completed the initial drug assessment, but had not provided any documentation to demonstrate her attendance at twelve-step meetings or her progress in aftercare and had not obtained stable employment. She had also failed to address her mental health issues despite experiencing hallucinations and hearing voices. Although A.B. testified at trial that she was not taking the medication because she was pregnant, she also admitted that her prenatal care doctor prescribed the drugs for her. Again, the trial court was free to believe the State's witnesses over A.B.'s own testimony. Accordingly, the trial court's determination that the children could not be placed with A.B. within a reasonable time is supported by clear and convincing evidence.
 {¶ 21} We find that the trial court made its findings according to the statutory guidelines of R.C. 2151.414 and that these findings are supported by clear and convincing evidence. Therefore, A.B.'s first assignment of error is overruled.
 {¶ 22} "II. The trial court erred in not ordering the child [sic] placed in planned permanent living arrangement, when an order was supported by the evidence adduced at trial and which evidence did satisfy the statutory requirements and conditions which allow a dispositional order of planned permanent living arrangement."
 {¶ 23} In her second assignment of error, A.B. argues that the trial court erred in failing to place the children in a planned permanent living arrangement ("PPLA") instead of awarding CCDCFS permanent custody. We disagree.
 {¶ 24} R.C. 2151.353(A)(5) provides that the trial court may place a child in a PPLA only if the statutory requirements are satisfied and only if CCDCFS requests the court to place the child in such an arrangement. Here, neither the mother, the guardian ad litem, nor CCDCFS requested or argued for a PPLA, nor did the court suggest an alternative disposition. Rather, CCDCFS always sought permanent custody of defendant's four children. Accordingly, the trial court, according to R.C. 2151.353(A)(5), could not have ordered a PPLA. See In re K.P., Cuyahoga App. No. A.D. 02901679, 2004-Ohio-1674; In re I.M., Cuyahoga App. Nos. 82669 and 82695, 2003-Ohio-7069; In re P.R., Cuyahoga App. No. 79609, 2002-Ohio-2029.
 {¶ 25} Assignment of Error II is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Plea Juvenile Court Division to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Cooney, J., and McMonagle, J., concur.
[1] The parties are referred to herein by their initials or title in accordance with this Court's established policy.