JOURNAL ENTRY AND OPINION
{¶ 1} Appellant-mother, D.R., appeals the judgment of the Cuyahoga County Common Pleas Court, Juvenile Division, that granted permanent custody of her children, A.R., N.R., J.R. and Di.R.,[1] to appellee, the Cuyahoga County Department of Children and Family Services ("CCDCFS"). For the reasons that follow, we affirm.
 {¶ 2} The record reflects that appellant is the biological mother of A.R., N.R., J.R. and Di.R. Da.R. is the biological father of the children. In 2000, while she was pregnant with Di.R., appellant left Da.R. because of his abusiveness in the marriage.
 {¶ 3} In July 2001, CCDCFS filed a motion for temporary custody of A.R., N.R. and J.R. when the children were found wandering unattended at a parade after their father had become intoxicated. Appellant admitted that due to the stress and anxiety caused by the domestic abuse of her husband, she was unable to provide for the children at the time and the children were adjudicated as neglected and dependent and placed in the temporary custody of CCDCFS. Di.R., who was born a few months later, was also subsequently adjudicated neglected and dependent and placed in the temporary custody of CCDCFS due to appellant's ongoing mental health issues.
 {¶ 4} CCDCFS subsequently filed motions to modify temporary custody to permanent custody for all the children and the matters were consolidated for trial, which was held on August 19, 2004 and September 9, 2004.
 {¶ 5} The evidence at trial demonstrated that appellant has a long history of major depression and has had serious mental health problems for approximately 20 years. Amy Speaks, appellant's mental health case manager at Northeast Ohio Health Services ("NEOHS"), testified that appellant had experienced five separate psychiatric hospitalizations between October of 2000 and October of 2003, during which time she suffered from symptoms such as paranoid thoughts, visual and auditory hallucinations and suicidal ideations. Speaks testified that she was not aware of any other services that CCDCFS or NEOHS could have offered appellant that had not already been offered.
 {¶ 6} The children remained in the custody of CCDCFS since the time of their removal, despite several unsuccessful attempts by CCDCFS to reunite them with appellant and their father. The first attempt occurred in the Fall of 2002, when CCDCFS took steps to gradually reintroduce the four children into appellant's home through a series of home visits. This reunification attempt was prompted by appellant's seeming compliance with case plan goals and by the recommendation of appellant's treating mental health professionals that reunification might be possible. This attempt at reunification was abandoned, however, when appellant became overwhelmed at the prospect of having her children returned to her home and admitted herself into psychiatric hospitalization.
 {¶ 7} CCDCFS continued to work with appellant and made another attempt at reunification in March 2003, again upon the recommendation of the mental health professionals who were treating appellant. She again became overwhelmed and panicked at the prospect of reunification, however, and was hospitalized to address her psychiatric problems.
 {¶ 8} CCDCFS then attempted to reunify the children with their father, but this attempt was aborted when Da.R., who has a history of alcoholism with alcohol-related blackouts, appeared for a court hearing smelling of alcohol. Da.R. subsequently stipulated to the allegations in the agency's motions and expressed his agreement to an order of permanent custody.
 {¶ 9} CCDCS arranged visits between appellant and the children from the time of their removal through the conclusion of the proceedings in the lower court. Appellant regularly visited with the children, although she failed to have any contact with them for a period of five or six months during the spring and summer months of 2003.
 {¶ 10} Carrie Ward, the CCDCFS social worker assigned to the case, testified at trial that she supervised the visits between appellant and the children. She reported that during visits, the three older children rarely interacted with appellant, choosing instead to play on their own. Ward testified that A.R. and N.R. had both told her that they did not want to return to appellant's care, and A.R. told her that he did not wish to even visit with appellant. Ward testified further that the youngest child, who was removed from appellant's care five weeks after she was born, "is not very attached or bonded at all to mother." Ward testified that the two families where the children were placed were willing to provide permanent homes for the children through adoption, and would continue to facilitate contact between the children in the future.
 {¶ 11} The children's guardian ad litem submitted written reports in which she recommended that an order of permanent custody would be in the best interests of the children. She repeated this conclusion at the end of trial, when she orally recommended that it would be in the children's best interest to be placed in the permanent custody of CCDCS. She reported that both A.R. and N.R. had expressed their desire to remain in their present placements and that they did not wish to return to appellant's home. She further indicated that J.R. and Di.R. were too young to express an opinion regarding their placement.
 {¶ 12} The trial court subsequently journalized entries granting CCDCFS' motions and ordering that the children be placed in the permanent custody of CCDCFS for purposes of adoption.
 {¶ 13} This appeal followed. The parties submitted briefs and waived oral argument. We subsequently granted appellant's motion to supplement her brief with additional arguments. Appellant thereafter filed her supplemental brief and CCDCFS filed a supplemental response brief. After thoroughly reviewing the record and the original and supplemental briefs submitted by the parties, we affirm.
 {¶ 14} In her first assignment of error, appellant contends that the trial court erred in terminating her parental rights because she had substantially complied with the case plan developed for her by CCDCFS to facilitate reunification with her children. In her second assignment of error, appellant contends that the trial court erred in finding that an award of permanent custody was in the best interest of the children. We consider these assignments of error together as they both essentially challenge the manifest weight of the evidence supporting the trial court's decision.
 {¶ 15} A trial court's decision to award permanent custody will not be reversed on appeal unless it is against the manifest weight of the evidence. In re Adoption of Lay (1986), 25 Ohio St.3d 41, 42. Judgments supported by competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. State v. Schiebel (1990), 55 Ohio St.3d 71, 74.
 {¶ 16} In this case, the termination of appellant's parental rights is governed by R.C. 2151.414(B)(1), which establishes a two-pronged test the juvenile court must apply when determining a motion for permanent custody. The statute provides that a court may grant permanent custody to the moving party if, at hearing, the court determines by clear and convincing evidence[2] that it is in the best interest of the child to grant permanent custody and one of the following apply:
 {¶ 17} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;
 {¶ 18} "(b) The child is abandoned.
 {¶ 19} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 20} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."
 {¶ 21} R.C. 2151.414(D) requires that in determining the best interest of the child, the court must consider all relevant factors, including, but not limited to: 1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; 2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem; 3) the custodial history of the child; 4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and 5) whether any of the factors in R.C. 2151.414(E)(7) through (11) are applicable. Although the trial court is required to consider each of the factors in making its permanent custody determination, only one of these factors needs to be resolved in favor of the award of permanent custody. In re Moore (Aug. 31, 2000), Cuyahoga App. No. 76942. Moreover, the statute does not require the court to list those factors or conditions it found applicable before making its determination that permanent custody is in the child's best interest. Inre I.M., Cuyahoga App. Nos. 82669 82695, 2003-Ohio-7069, at ¶ 27.
 {¶ 22} Here, the trial court found pursuant to R.C. 2151.414(B)(1)(d) that the children had been in the custody of a public children services agency for 12 or more months of a consecutive 22-month period. This finding is supported by the record, which demonstrates that by the time of trial, A.R., N.R. and J.R. had been out of appellant's home for approximately three years, while Di.R. had spent all but a few weeks of her 2-1/2 years in agency custody.
 {¶ 23} The trial court then proceeded to a best interest determination. It found that "upon considering the interaction and interrelationship of the children with the children's parents, siblings, relatives, and foster parents; the wishes of the children; the custodial history of the children * * *; the children's need for a legally secure placement, and whether that type of placement can be achieved without a grant of permanent custody; and the report of the Guardian Ad Litem," a grant of permanent custody was in the best interests of the children. Despite appellant's arguments to the contrary, we find that the record supports the trial court's judgment.
 {¶ 24} The evidence at trial indicated that during their visits with appellant, the three older children rarely interacted with her, choosing instead to go off and play on their own. Agency social worker Carrie Ward testified that both A.R. and N.R. had told her that they did not wish to return to appellant's care, and A.R. did not even wish to visit with appellant. Ward also testified that Di.R. "is not very attached or bonded at all to mother."
 {¶ 25} Moreover, in her written report, the children's guardian ad litem recommended that an order of permanent placement was in the children's best interests. She informed the court that both A.R. and N.R. had expressed their desire to remain in their present placements and that they did not wish to return to appellant's care. The guardian ad litem indicated further that the two younger children were too young to express an opinion regarding their placement.
 {¶ 26} With respect to the children's need for a legally secure placement, and whether such placement could be achieved without a grant of permanent custody, appellant's treating psychiatrist, Dr. Elaine Campbell, testified that she did not expect any improvement with appellant's mental health decompensation[3] issues within the next six months, that appellant would have a difficult time caring for the children anytime in the near future, and that she did not anticipate that appellant would be able to care for the children within the next six months on her own. Moreover, the evidence at trial indicated that the two previous attempts at reunification had resulted in psychiatric hospitalization for appellant.
 {¶ 27} Appellant argues, however, that the trial court improperly focused on her past psychiatric problems and should have considered the improvements in her mental health that had occurred since March 2003, when the last attempt at reunification failed. We recognize that there was evidence at trial that appellant was responding well to treatment and had made progress in coping with her mental illness. The evidence also demonstrated, however, that the children, who were not bonded or attached to appellant, had expressed a desire to remain in their current placements and indicated that they did not wish to return to appellant's care. Moreover, there was no evidence in the record that appellant would be able to care for her children in the near future. Indeed, Dr. Campbell testified that she was not certain that appellant would be able to adequately care for her children in another year. In light of this evidence, the trial court did not err in finding that appellant's chronic mental illness prevented her from providing an adequate home for the children and that a grant of permanent custody was in the best interests of the children.
 {¶ 28} On this record, we find competent, credible evidence to support the findings of the trial court and its judgment granting permanent custody to CCDCFS. Appellant's first and second assignments of error are therefore overruled.
 {¶ 29} In her third assignment of error, appellant argues that the trial court committed reversible error by failing to protect her procedural safeguards. Specifically, appellant contends that her counsel and guardian ad litem were not present for several hearings in which the court extended the grant of temporary custody to CCDCFS and that she did not receive appropriate notice of the hearing regarding the first extension of temporary custody.
 {¶ 30} The claimed deficiencies, however, occurred at earlier stages of the proceedings in this matter, all of which preceded the filing of the motion for permanent custody, which is the subject of this appeal. An adjudication of neglect or dependency is a final order capable of immediate review. In re Murray 91990), 52 Ohio St.3d 155, 161. Likewise, any order extending an original temporary custody order is itself a final appealable order. In re Patterson (1984), 16 Ohio App.3d 214. Failure to timely challenge an order of adjudication or an order extending the original temporary custody order divests a reviewing court of jurisdiction to consider any error raised in a subsequent appeal. In reMichael A., Cuyahoga App. No. 79835, 2002-Ohio-1270. Because appellant never appealed the final orders regarding temporary custody, she cannot now, on an appeal of an order awarding permanent custody, seek reversal by attacking those earlier proceedings.
 {¶ 31} Moreover, despite appellant's argument that her attorney and guardian ad litem were not present at all substantive proceedings, it is undisputed that her counsel and guardian ad litem were present at all substantive hearings related to the motion for permanent custody, which is the subject of this appeal.
 {¶ 32} Appellant's third assignment of error is therefore overruled.
 {¶ 33} In her fourth assignment of error, appellant argues that the decision of the trial court must be reversed because the children's guardian ad litem did not comply with Loc.Juv.R. 20(C)(4), which states that "[a]ll reports must be filed at least one (1) week prior to an evidentiary court hearing, subject to court modification on a case-by-case basis." Appellant contends that the guardian did not submit her report to the court until August 19, 2004, the first day of trial, did not file it with the clerk's office, and did not include a certificate of service with the report.
 {¶ 34} The record reflects that appellant made no objection at trial regarding the submission of the guardian ad litem's report. All parties were present when the guardian gave her recommendation and no one raised any issues regarding the timeliness of the report, nor did anyone request an opportunity to cross-examine her regarding the report or her recommendation. Accordingly, appellant has waived any claim of error in this regard. As this court stated in In re Ch.O., Cuyahoga App. No. 84943, 2005-Ohio-1013, at ¶ 36:
 {¶ 35} "Appellant failed to object at trial to the manner in which the guardian ad litem's report was filed and presented to the court. This court has routinely held that, absent a timely objection in the trial court, no reversible error occurs in this situation, even when no guardian's report is ever filed. Appellant had two opportunities — at the February 17, 2004 and April 27, 2004 hearings — to examine the guardian as to her recommendation. She failed to do so; nor did she object at trial to the timeliness of the filing of the report. Therefore, any claim of error is waived * * *." (Citations omitted.)
 {¶ 36} Moreover, appellant does not allege that she did not receive the guardian's report or that she was unaware of the contents of the report at the time of trial. Accordingly, she cannot demonstrate any prejudice suffered because the report was submitted on the first day of trial.
 {¶ 37} Appellant's fourth assignment of error is therefore overruled.
 {¶ 38} Finally, appellant contends that the trial court's judgment should be reversed because the court did not make adequate findings. Specifically, appellant contends that because the sunset date[4] had passed without the filing of a motion by CCDCFS pursuant to R.C.2151.415(A), the trial court was required, before entering a dispositional award, to first determine whether "the problems that led to the original grant of temporary custody have not been resolved or sufficiently mitigated." In re Young Children (1996), 76 Ohio St.3d 632. Appellant argues that the trial court failed to do so and, therefore, its judgment should be reversed.
 {¶ 39} At the outset, we observe that we need not address this argument as it relates to the father because he appeared for trial, stipulated to the allegations in the motion and expressed his agreement with an order of permanent custody.
 {¶ 40} With respect to appellant, in its journal entry setting forth its permanent custody findings of fact, the trial court specifically found that "the chronic mental illness of the mother is so severe that it prevents her from providing an adequate home for the children at the present time, and as anticipated, within one year." Appellant's mental illness was one of the factors that led to the children's removal from the home and placement in the temporary custody of CCDCFS. Indeed, as appellant acknowledges in her supplemental brief, her "mental health issues are replete throughout the case from the very start."
 {¶ 41} In light of this finding, it is apparent that, before awarding permanent custody, the trial court found, in compliance with In re YoungChildren, that the problems which were present at the time of the children's removal had not been sufficiently remedied.
 {¶ 42} Appellant's fifth assignment of error is overruled. Affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Common Pleas Court, Juvenile Court Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, P.J., and Kilbane, J., CONCUR.
[1]The parties are referred to herein by their initials in accordance with this court's policy regarding non-disclosure of identities in juvenile cases.
[2] "Clear and convincing evidence is the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." In re Estate of Haynes (1986),25 Ohio St.3d 101, 104.
[3] Dr. Campbell testified that decompensation is when persons abruptly become distraught, depressed, hopeless, and paranoid when faced with stress. She explained that it is "when someone's essentially falling apart."
[4] The sunset date is the date of expiration of an order of temporary custody as set forth in R.C. 2151.353(F).