JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, mother of child, appeals the decision of the Cuyahoga County Court of Common Pleas, Juvenile Division, to award permanent custody of child ("P.S.") to the Cuyahoga County Department of Children and Family Services ("CCDCFS"). Finding no error in the proceedings below, we affirm.
 {¶ 2} The following facts give rise to this appeal. On February 28, 2002, CCDCFS filed a complaint alleging neglect and requesting a disposition of temporary custody regarding P.S. and her twin siblings. The children were removed because of unsanitary living conditions, improper hygiene, and medical neglect. On June 11, 2002, the children were adjudged to be neglected and P.S. was placed in the temporary custody of CCDCFS, while her siblings were returned to appellant under an order of protective supervision. Upon proper motion, the order was extended.
 {¶ 3} P.S. suffers from numerous medical conditions, including mental retardation and Ehler's Danlos Syndrome ("EDS"). EDS is a genetic disorder that affects connective tissue synthesis and structure. Consequently, the skin is fragile and hyperelastic, joints are unstable and hyperextensible, and blood vessels and tissue are fragile. P.S. wears leg and foot braces and until recently had a gastrointestinal tube because she had difficulty eating normal foods and gaining weight. She is significantly smaller than average; she is nine years old and weighs approximately 40 pounds. She has poor bowel and bladder control and requires frequent baths. P.S. does not speak in full sentences. She attends physical, occupational, and speech therapy weekly. She sees a dietician, and she has many dental issues requiring regular visits to the dentist. Finally, P.S. sees her pediatrician and a medical specialist regularly.
 {¶ 4} A case plan was developed by CCDCFS in an effort to assist appellant with reunification. It included services described as parenting education, family preservation, employment and psychological evaluation, as well as for establishing paternity. Subsequently added were drug testing and treatment, and ongoing counseling. In addition, appellant was to obtain and maintain stable housing and keep it free of rodents and insects, as well as keep the floors swept and clear of all objects. Appellant was to accompany P.S. to all medical appointments and help her with personal hygiene. Finally, appellant was to obtain her G.E.D. and employment.
 {¶ 5} From February 2002 until the trial dates in November and December 2004, appellant failed to maintain stable and clean housing, failed to maintain employment for more than a month or two at a time, and failed to keep all of P.S.'s medical appointments. P.S.'s father is unknown.
 {¶ 6} Appellant currently resides, along with her twins, with an adult family friend in a two-bedroom apartment. She does not pay rent. Neither she nor the other adult is employed. Appellant's housing is described as roach infested, cluttered, and overcrowded. P.S.'s guardian ad litem ("GAL") explained that "[m]y feet stuck to the floor and made the sound of tearing adhesive when I moved."
 {¶ 7} Originally, overnight visits were allowed; however, those ceased when the foster mother complained that P.S. would return in dirty clothing, not bathed, and without the toys and clothing that were sent with her. The foster mother bathed her at least three times a day because of P.S.'s frequent accidents. Further, P.S. would often become ill after overnight visits with appellant.
 {¶ 8} When visitation was resumed in a public setting, appellant failed to provide lunch for P.S., as requested, nor did she bring anything to occupy the child, such as toys or books. Further, appellant required constant prompting to attend to her daughter's needs. In addition, appellant often sent others in her place.
 {¶ 9} As for P.S.'s therapy and medical appointments, appellant was required to pick her up from school and take her daughter to her appointments; however, she failed to do so on several occasions. Appellant was then required only to attend the appointments, which she did sporadically.
 {¶ 10} On November 17, 2003, CCDCFS filed a motion to modify temporary custody to permanent custody regarding P.S. Trial was had in November and December of 2004, and the court awarded permanent custody of P.S. to CCDCFS.
 {¶ 11} Appellant appeals, advancing two assignments of error for our review. The first assignment of error states:
 {¶ 12} "I. The trial court erred in granting permanent custody since (1) none of the circumstances set forth in R.C.2151.414(E) were proven by clear and convincing evidence and (2) the judgment is against the manifest weight of the evidence."
 {¶ 13} A claim that a factual finding is against the manifest weight of the evidence requires us to examine the evidence and determine whether the trier of fact clearly lost its way. In re:M.W., Cuyahoga App. No. 83390, 2005-Ohio-1302. However, there is a presumption that the trial court's factual findings are correct, because the trial court is in a better position to judge the credibility of the witnesses. Id.
 {¶ 14} In order to terminate parental rights and grant permanent custody to a county agency, the record must demonstrate by clear and convincing evidence the existence of one of the conditions set forth in R.C. 2151.414(B)(1)(a)-(d) and that permanent custody is in the best interest of the child. Clear and convincing evidence is that quantum of evidence which instills in the trier of fact a firm belief or conviction as to the allegations sought to be established. Cross v. Ledford (1954),161 Ohio St. 469, 477. Our review of the weight of the evidence in a permanent custody case is limited to whether competent, credible evidence exists to support the trial court's factual determinations. In re Starkey, 150 Ohio App.3d 612,2002-Ohio-6892.
 {¶ 15} Appellant argues that there is no competent or credible evidence of any of the factors set forth in R.C.2151.414(E) that would prevent appellant from parenting P.S. or from providing a permanent home within a reasonable time.
 {¶ 16} In the instant case, R.C. 2151.414(E) is inapplicable because there is no factual dispute as to the trial court's finding that P.S. "is not orphaned but has been in temporary custody of a public children services agency or private child placing agency under one or more separate orders of disposition for twelve or more months of a consecutive twenty-two month period." P.S. was removed from her home on February 27, 2002 and had not returned as of the trial date in November 2004; therefore, she was in county custody for almost three years for purposes of R.C. 2151.414(B)(1)(d). Consequently, the court had no obligation to determine whether P.S. cannot or should not be placed with either parent within a reasonable time pursuant to R.C. 2151.414(B)(1)(a) and 2151.414(E). See, In re: M.H.,
Cuyahoga App. No. 80620, 2002-Ohio-2968. The only consideration at this point is whether permanent custody is in the best interest of the child pursuant to R.C. 2151.414(D). In re:R.K., Cuyahoga App. No. 82374, 2003-Ohio-6333.
 {¶ 17} When determining the best interest of the child, the court is required to consider all relevant factors, including but not limited to the following:
"1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;" (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard to the maturity of the child; "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;" (4) The child's need for a legally secure placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; "(5) Whether any of the factors in division (E)(7) to (11) of this section apply in relation to the parents and child."
R.C. 2151.414(D).
 {¶ 18} This court has found that only one of these enumerated factors needs to be resolved in favor of the award of permanent custody. In re Moore (Aug. 31, 2000), Cuyahoga App. No. 76942, citing, In re Shaeffer Children (1993), 85 Ohio App.3d 683; see, also, In re M.Z., Cuyahoga App. No. 80799, 2002-Ohio-6634;In re Legg, Cuyahoga App. Nos. 80542 and 80543, 2002-Ohio-4582.
 {¶ 19} The trial court found that the "[p]arents have failed to remedy the conditions which caused the removal of the child. Mother has demonstrated a relationship to or with the child but not a parent-child bond. The Court further finds that mother has not demonstrated a willingness or independent ability to parent attentively and consistently, nurture, feed, clothe or seek additional visitation time to provide for the care of the child and her special needs. No evidence was presented to show that mother has demonstrated a desire to care and nurture the child independent of the help and care provided by others."
 {¶ 20} We find clear and convincing evidence to support the trial court's award of permanent custody. The father has not established paternity and has abandoned the child. The appellant has failed to take advantage of the services provided by refusing to allow a parent aide into the home and failing to attend out-patient drug treatment. Furthermore, she continued to test positive for marijuana (when she would appear for testing), failed to find stable and clean housing, failed to find steady employment, and failed to consistently attend P.S.'s medical and therapy appointments.
 {¶ 21} P.S. is a child who needs constant attention and help. She needs to be reminded to chew and swallow her food. She needs to be reminded to use the restroom. She needs a safe and secure home so as not to injure herself or become ill. The appellant has failed to demonstrate that she is capable or willing to provide P.S. with the care and home she needs and deserves.
 {¶ 22} Appellant's first assignment of error is overruled.
 {¶ 23} The second assignment of error states:
 {¶ 24} "II. It was error not to appoint an attorney to represent the child."
 {¶ 25} Appellant argues that it was error for the trial court not to appoint independent counsel for the child when she expressed a desire to return home. P.S. was appointed one person to serve as GAL and counsel for child.
 {¶ 26} "Generally, when an attorney is appointed as guardian ad litem, that attorney may also act as counsel for the child, absent a conflict of interest. R.C. 2151.281(H); In re Smith,77 Ohio App.3d at 14, see, also, Loc.R. 35(G) of the Court of Common Pleas of Cuyahoga County, Domestic Relations Division. This court stated in In re Legg, Cuyahoga App. Nos. 80542 and 80543, 2002-Ohio-4582, that `the appointment of separate individuals to serve as guardian ad litem and counsel for a child is only required if either the guardian ad litem or the trialcourt determines that a conflict exists between the role ofguardian ad litem and the role of an attorney. Juv.R. 4 (C)(2).' (Emphasis added.)" Jennings-Harder v. Yarmesch, Cuyahoga App. No. 83984, 2004-Ohio-3960.
 {¶ 27} In this case, the social worker initially noted that P.S. expressed a desire to go home; however, she indicated that the child may not have the ability to understand because of her age and cognitive abilities. The trial court then referred P.S. to the court psychiatric clinic for an evaluation to determine whether the child was capable of understanding and expressing her needs and desires to a GAL or an attorney.
 {¶ 28} The clinic's evaluation indicated that "[w]hile [P.S.] can indicate some preference with regard to simple issues, favorite toys, food, she has virtually no ability to contribute significantly to any issues of greater importance. [P.S.] has been assigned a Guardian Ad Litem to address the issues of her best interests. In a normal situation [P.S.] would be able to participate only minimally with regard to these issues. In this circumstance she is not able to participate at all in any decisions surrounding her best interests."
 {¶ 29} Even so, the trial court indicated a willingness to take into consideration P.S.'s desires, as stated by the GAL and others in accordance with R.C. 2151.414(D)(2) with due regard for the child's maturity. At one point, P.S. reportedly began to act out when visitation with her mother was terminated and she expressed a desire to see her mother. Later, however, the GAL reported that P.S. expressed a desire to stay in her foster home and began to cry when she mistakenly thought she was going home. Further, the case aide testified that P.S. would defecate in her pants after visiting with her mother and hearing she may be returning home to her mother soon.
 {¶ 30} We find that the trial court committed no error by not appointing a separate attorney for P.S. because there was no clear conflict of interest between what P.S. desired and what the GAL was recommending.
Judgment affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Blackmon, A.J., and Cooney, J., concur.