[Cite as *In re T.C.*, 2012-Ohio-2307.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 97345

# IN RE: T.C.
# A Minor Child

# (Appeal by G.C., Father)

## JUDGMENT:
## AFFIRMED

Civil Appeal from the
Cuyahoga County Common Pleas Court
Juvenile Court Division
Case No. AD-09908820

**BEFORE:** Blackmon, A.J., Celebrezze, J., and Cooney, J.

**RELEASED AND JOURNALIZED:** May 24, 2012

**ATTORNEY FOR APPELLANT**

Joseph Vincent Pagano
P.O. Box 16869
Rocky River, Ohio 44116

**ATTORNEYS FOR APPELLEES**

**For C.C.D.C.F.S.**

Willliam D. Mason
Cuyahoga County Prosecutor

Willie Mitchell
Asst. County Prosecutor
C.C.D.C.F.S.
811 Quincy Avenue, Rm. 341
Cleveland, Ohio 44104

**Guardian Ad Litem**

Melinda J. Annandale
20033 Detroit Road, Annex F1-1
Rocky River, Ohio 44116

PATRICIA ANN BLACKMON, A.J.:

{¶1} Appellant G.C. ("father") appeals the juvenile court's judgment granting permanent custody of his minor child T.C. (DOB: 9/7/05) to the Cuyahoga County Department of Children and Family Services ("CCDCFS" or "the agency").[1] He raises the following assigned error for our review:

**I. The trial court abused its discretion in awarding permanent custody to CCDCFS and finding it was in the [child's] best interest because the award is against the manifest weight of the evidence and is not supported by clear and convincing evidence.**

{¶2} Having reviewed the record and pertinent law, we affirm the juvenile court's judgment. The apposite facts follow.

## Facts

{¶3} On June 7, 2009, T.C. and J.M. (the father's stepdaughter) were removed from the custody of their maternal grandmother. The grandmother had been taking care of the girls because their mother's (T.M.) whereabouts were unknown. The grandmother notified the agency that she could no longer take care of the children, and CCDCFS obtained temporary custody of the children. The children were placed with a foster family.

---

[1]The father also requested custody of his step-daughter, J.M.; the agency moved to dismiss that part of the appeal, which we granted.

**{¶4}** Attempts to locate the mother were unsuccessful. In September 2010, T.C.'s father was located. The father expressed a desire to receive custody of both girls, even though he was not biologically related to J.M.; he claimed he had helped raise her when he was married to T.C.'s mother.

**{¶5}** The father is 38 years old and employed as a telemarketer. For most of T.C.'s life, the father had been in prison for committing felonious assault and child endangerment against his son, who was eight years old at the time the offenses were committed. The father was sentenced to two years in prison, but was released after serving seven months. He violated his probation and served the remainder of his two-year prison term. He also acknowledged a domestic violence charge against his wife (T.M.). He admitted having been arrested numerous times for receiving stolen property, drugs, and theft.

**{¶6}** He currently lives in a two-bedroom duplex located on East 128th Street in Cleveland, Ohio. He testified that his income was sufficient to raise both girls and that he could provide health insurance for them. His mother has volunteered to help with the children if his work schedule required him to work longer hours. The father attended 13 of the 16 scheduled visitations with the girls. (The agency canceled one of the visits and the father canceled the other two.) The social worker noted that the father had positive interaction with the girls during visitation and that the girls were not fearful of him. The father completed parenting and anger management courses while he was incarcerated.

**{¶7}** The social worker testified that in order for the father to be considered for reunification, he had to show that he lived in Ohio for the past five years. He was able to show that he was in an Ohio prison for three of the past five years, and that for the fifth year he lived with his mother in the duplex he later rented. However, he did not submit any documentation regarding where he lived the year after he was released from prison. He claimed he requested a copy of his W-2 from his employer who he worked for during that year, but at the time of the hearing, he had not yet procured the W-2 form. His failure to have the documentation was problematic because, according to the social worker, it was a mandatory requirement for reunification.

**{¶8}** The social worker stated that the maternal and paternal grandmothers showed an interest in having custody of the children. The paternal grandmother only wanted custody of T.C. Although the social worker advised the grandmothers of the steps they needed to take to be considered for custody, neither followed through with the requirements. The social worker testified that T.C. was very close to her half-sister, J.M., and recommended the girls be kept together in foster care.

**{¶9}** The guardian ad litem ("GAL") also recommended that T.C. be placed with J.M. in foster care because they had not lived with the father in over four years and the girls had only started visitation with their father in September 2010. She also noted that the girls shared a close relationship. Both the GAL and the social worker were concerned with the father's prior violent history with his son.

**{¶10}** The trial court conducted an in camera hearing with the children to determine with whom they desired to live. J.M., 10 years old, testified that she either wanted to live with her maternal grandmother or her foster mother. T.C., who was almost six years old at the time of the hearing, testified that she wanted to live wherever J.M. lived. The trial court awarded permanent custody of the girls to the agency.

## Permanent Custody

**{¶11}** In his sole assigned error, the father argues that the trial court abused its discretion by awarding permanent custody of T.C. to CCDCFS.

**{¶12}** It is well established that the right to parent one's children is a fundamental right. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 28. Nevertheless, a government agency has broad authority to intervene when necessary for the child's welfare or in the interests of public safety. *Id.* at ¶ 28-29, citing R.C. 2151.01(A). In accordance with R.C. 2151.414, a trial court may grant permanent custody of a child to an agency if the court determines, by clear and convincing evidence, that one of the factors enumerated in R.C. 2151.414(B)(1)(a)-(d) applies and that an award of permanent custody is in the child's best interest. *Id.* at ¶ 23. "Clear and convincing evidence" is evidence that "will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954).

**{¶13}** The factors under R.C. 2151.414(B)(1) include the following: (a) the child cannot be placed with either parent within a reasonable period of time or should not

be placed with either parent; (b) the child is abandoned; (c) the child is orphaned and no relatives are able to take permanent custody of the child; or (d) the child has been in the temporary custody of one or more public or private children services agencies for 12 or more months of a consecutive 22-month period.

{¶14} The record supports the court's conclusion that T.C. had been in CCDCFS's custody for two years. T.C. was placed in CCDCFS's custody on June 8, 2009, and her custody hearings concluded on June 28, 2011. Therefore, the condition set forth in R.C. 2151.414(B)(1)(d) was satisfied.

{¶15} In addition, the court concluded pursuant to R.C. 2151.414(B)(1)(a), that the "child cannot be placed with one of the child's parents within a reasonable period of time and should not be placed with either parent." R.C. 2151.414(E) sets forth the factors a trial court is to consider in determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. The existence of one factor alone will support a finding that the child cannot be reunified with the parent within a reasonable time. *See In re: William S.*, 75 Ohio St.3d 95, 1996-Ohio-182, 661 N.E.2d 738.

{¶16} The juvenile court found that T.C. could not be reunited with the father because he was convicted or pleaded guilty to offenses listed in R.C. 2151.414(E)(6) or 2151.414(E)(7) and committed them against the child's sibling. The offenses listed under these sections included: endangering children, felonious assault, and domestic violence. The father was found guilty of all three of these offenses against T.C.'s

brother. By finding these factors applied to the father, the court satisfied the requirement that the child could not be reunified with the father within a reasonable time.

{¶17} The father contends that the court's finding that T.C. could not be reunified with him within a reasonable time was not supported by the evidence because he had complied with the case plan to obtain housing and employment. However, regarding the father, the court was only concerned with his prior convictions. The father contends the convictions were from five years ago and should not be considered in depriving him of custody because he completed parenting and anger management classes while incarcerated. However, the father has only been out of prison for two years and during that time has not, except for his recent supervised visitation with T.C. and J.M., had much interaction with the children. Although he contends the charges arose from one beating, the beating was severe enough to leave scars that were sufficient to support a felonious assault charge.

{¶18} Moreover, although the father contends he complied with the case plan, he failed to provide evidence that he has lived in Ohio for the past five years. It was undisputed that he was incarcerated for three of the years, and for the past year lived with his mother in the duplex. However, he presented no evidence to show where he lived the year after being released from prison. He contended he was having difficulties in obtaining his W-2 from his employer during that time; however, as the court explained, he could have submitted an affidavit from the person he lived with at the time.

{¶19} Having satisfied R.C. 2151.414(B)(1), the only other finding the court was required to make was that an award of permanent custody was in the best interest of the child. *See In re D.A.*, 8th Dist. No. 95188, 2010-Ohio-5618. R.C. 2151.414(D)(1) sets forth the relevant factors a court must consider in determining the best interest of the child. These factors include, but are not limited to the following: (a) the child's interaction and interrelationship with the child's parents, siblings, relatives, and foster caregivers; (b) the child's wishes expressed directly or through a GAL; (c) the child's custodial history; (d) the child's need for legally secure permanent placement and if that type of placement can be obtained without granting permanent custody to the agency; and (e) whether any factors listed in R.C. 2151.414(E)(7)-(11) apply.

{¶20} T.C.'s relationship between her father and J.M. supports the trial court's conclusion that permanent custody to CCDCFS was in her best interest. (R.C. 2151.414(D)(1)(a)). She was nine months old when her father was incarcerated. His appearance in her life is a relatively recent event. Although he showed positive interaction with her during his supervised visitation, he has had limited interaction with her. Moreover, he was out of prison an entire year prior to establishing contact with her. He claimed he did not know where she was, but did not present evidence of his efforts to locate her. T.C.'s strongest bond is with her half-sister J.M., and she told the judge in her in camera interview that she wanted to live wherever her sister lived. Because T.C.'s father is not J.M.'s biological father, obtaining custody of J.M. is problematic for him.

**{¶21}** The GAL also recommended permanent custody of the child to CCDCFS. She stated that T.C. shares a close relationship with J.M., and that the father had only recent reappeared in T.C.'s life.

**{¶22}** Although the father has shown a strong desire to parent the child and has made efforts to prepare for such a role, our primary inquiry remains the best interest and welfare of the child. T.C. does not have an established relationship with her father due to the short amount of time she has had with him prior to the custody proceedings. Both the social worker and the GAL agreed that T.C.'s strongest bond is with her half-sister, J.M.

**{¶23}** Also, the father's past violent history with T.C.'s brother cannot be ignored. R.C. 2151.414(D)(1)(e) refers to factors listed under (E)(7)-(9) in considering the best interest of the child. These sections include convictions for felonious assault, domestic violence, or child endangerment regarding the child or sibling. Although the father contends his convictions were committed five years ago, the statute does not indicated that these offenses cannot be considered after a certain amount of time has elapsed.

**{¶24}** Moreover, R.C. 2151.414(D)(1)(c) requires the court to consider "the custodial history of the child including whether the child has been in temporary custody of one or more public children services agencies or a private child placement agency for twelve or more months of a consecutive twenty-two month period." As we previously stated, at the time of the hearing, T.C. had been in CCDCFS's custody for over two years.

{¶25} The father argues that CCDCFS failed to investigate placement of T.C. with her paternal grandmother, who was interested in obtaining custody of T.C. The social worker testified at trial that she informed the grandmother what was required for her to be considered as a custodian for the child. Unfortunately, at the time of the hearing, the grandmother had failed to comply with the requirements. Thus, the trial court could not consider her as a suitable custodian.

{¶26} The father, in the alternative, argues the trial court's decision is against the manifest weight of the evidence. A claim that a factual finding is against the manifest weight of the evidence requires us to examine the evidence and determine whether the trier of fact clearly lost its way. *See In re M.W.*, 8th Dist. No. 83390, 2005-Ohio-1302, citing *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 79-80, 461 N.E.2d 1273 (1984). We undertake this duty with the presumption that the court's factual findings were correct. *Id.* Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. *Id.*, citing *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus. As we discussed above the trial court's decision was based on findings that were supported by competent, credible evidence. Accordingly, the father's sole assigned error is overruled.

{¶27} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

PATRICIA ANN BLACKMON, ADMINISTRATIVE   JUDGE

FRANK D. CELEBREZZE, JR., J., and
COLLEEN CONWAY COONEY, J., CONCUR