[Cite as *In re A.D.*, 2019-Ohio-1944.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| IN THE MATTER OF: | JUDGES:<br>Hon. William B. Hoffman, P.J |
| L.D., S.D., A.D., and I.D. | Hon. John W. Wise, J.<br>Hon. Craig R. Baldwin, J. |
| | Case Nos. 18-CA-91, 18-CA-92,<br>18-CA-93, and 18-CA-94 |
| | O P I N IO N |

| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Appeal from the Licking County Court of Common Pleas, Juvenile Division, Case Nos. F2017-0920, F2017-0921, F2017-0922, and F2017-0923 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | May 14, 2019 |

APPEARANCES:

For Tiffany Denlinger

MICHAEL R. DALSANTO
33 West Main Street – Suite #109
Newark, Ohio  43055

For State of Ohio

WILLIAM C. HAYES
LICKING COUNTY PROSECUTOR

ANDREW P. ROWAN
Assistant Prosecuting Attorney
20 S. Second Street – Fourth Floor
Newark, Ohio  43055

For David Lyons

RUTHELLEN Q. WEAVER
542 South Drexel Avenue
Bexley, Ohio  43209

For Father, Jacob Denlinger

EVAN WAGNER
Law Offices of Mark J. Miller, LLC
555 City Park Avenue
Columbus, Ohio  43215

MANDY DELEEUW
Assistant Prosecuting Attorney
20 S. Second Street – Fourth Floor
Newark, Ohio  43055

LAURIE WELLS - GAL
Hayes Law Offices, Inc.
195 E. Broad Street
Pataskala, Ohio  43062

*Hoffman, P.J.*

{¶1}    In Licking App. Nos. 2018 CA 00091, 2018 CA 00092, 2018 CA 00093, and 2018 CA 00094, appellant Tiffany Denlinger ("Mother") appeals four September 19, 2018 Judgment Entries entered by the Licking County Court of Common Pleas, Juvenile Division, which terminated her parental rights with respect to her four minor children and granted permanent custody of the children to appellee Licking County Department of Job and Family Services, Children Service Division ("the Agency"), and which denied Jacob Denlinger's motion, requesting legal custody be granted to his sister, Carrie Kautz.

STATEMENT OF THE CASE AND FACTS

{¶2}    Mother and Denlinger are the biological parents of Child 1, Child 2, and Child 3.[1]  David Lyons is the biological father of Child 4.[2]

{¶3}    On December 19, 2017, the Agency became involved with the family after learning Child 3 was found unresponsive and transported to Nationwide Children's Hospital in Columbus.  The Agency subsequently ascertained Child 3 was physically abused by Mother's live-in boyfriend, Skylar Fritz. Child 3's prognosis was poor and medical professionals did not expect her to survive.   Mother and Fritz were arrested on December 19, 2017.

{¶4}    The trial court granted emergency shelter care custody of all four children to the Agency on December 20, 2017. The trial court appointed Attorney Laurie Wells as guardian ad litem.  On December 20, 2017, the Agency filed four complaints, alleging Child 1, Child 2, Child 3, and Child 4 were abused and/or dependent children and seeking

---

[1] Denlinger was convicted of two counts of rape of a minor in January, 2016.  He is not scheduled to be released until January 19, 2030.  He is not a party to this Appeal.
[2] Lyons was convicted of burglary and sentenced to four years in prison with a release date of January 27, 2022. He is not a party to this Appeal.

temporary custody of the children. The Agency filed amended complaints on January 16, 2018, changing the prayer for relief to permanent custody. Attorney Wells filed her report and recommendation on February 9, 2018, finding it would be in the children's best interests to grant permanent custody to the Agency. Following an adjudicatory hearing on February 15, 2018, the trial court found all four children to be dependent children. The trial court further found Child 1, Child 2, and Child 3 were abused children.

{¶5} Counsel for Denlinger filed a motion on February 15, 2018, requesting the trial court award legal custody of the children to Carrie Kautz, Denlinger's sister. Via Judgment Entry filed May 9, 2018, the trial court appointed Attorney Wells as the children's attorney in addition to her role as guardian ad litem. The Agency moved for permanent custody on May 23, 2018.

{¶6} The trial court conducted a hearing on Denlinger's motion for legal custody and the Agency's motion for permanent custody on September 17, 2018.

{¶7} Carrie Kautz testified in support of the motion for legal custody. Kautz is a nursing assistant employed at an extended care facility on an as needed basis. She typically works four eight hour shifts every two weeks. Kautz is working on her Associate's Degree in Nursing and attends school sixteen hours per week. Kautz anticipated graduating in May, 2019. She is also a volunteer firefighter.

{¶8} Kautz explained she contacted the Agency immediately upon learning the children had been taken into custody to learn what she needed to do in order to get custody of them. Kautz met with the guardian ad litem as well as the caseworker. Although Kautz acknowledged the children were going to need her to be a full-time mother, she intended to continue working on a part-time basis. Kautz stated she and her

husband had only one visit with the children, despite requesting more visitation. Kautz and her husband have several children of their own. Kautz was diagnosed with PTSD and mild depression. She has been in treatment for three years. Her therapist noted Kautz is very stable and her diagnoses do not impact her ability to parent.

**{¶9}** Mackenzie Peterson, a licensed psychologist, testified she received a referral from the Agency to provide counseling to Child 1 and Child 2. After conducting assessments of Child 1 and Child 2, Peterson diagnosed each of them with post-traumatic stress disorder. Child 1 and Child 2 disclosed the men Mother brought into her home were abusive to mother in front of them, and were physically and emotionally abusive to them. Child 1 and Child 2 were aware Fritz caused Child 3's injuries. Peterson saw Child 1 and Child 2 after their visit with Kautz. Child 1 feared leaving their foster mother's home. Child 2 focused on toys Kautz had at her home. The children feel safe in their current foster home and their behavior has improved.

**{¶10}** Sherry Riffell, Child 3's foster mother, detailed the child's developmental deficits and her current therapy schedule. Child 3 cannot walk and uses a wheelchair. Child 3 needs assistance with every aspect of her life. Child 3 requires 24 hour/day care. The child's therapy requires frequent visits to Children's Hospital in Cincinnati. Riffell was not in a position to adopt Child 3, but indicated she would care for the child until a permanent home was found.

**{¶11}** Laurie Wells, the guardian ad litem, testified she visited Kautz and her husband on February 26, 2018. Wells had concerns about Kautz and her husband caring for Mother's four children in addition to their own children. Wells observed the visit between Kautz, her husband, and the children, and found they were unable to parent all

of the children at the same time. Wells opined placement with Kautz and her husband would be setting the whole family up for failure. Wells emphasized she liked Kautz and her husband and found them to be good people, but did not feel it would be in the children's best interests to be placed with them.

{¶12} Matthew Tracy, the ongoing social worker for the family, detailed each of the children's special needs, their behaviors, and the improvements they have made since coming into the Agency's care. Child 1, Child 2, and Child 4 are together in the same foster home and the foster family wants to adopt them. The foster family is willing to learn about Child 3's needs and determine whether they would be able to care for the child. With respect to Kautz and her husband, Tracy stated he did not believe legal custody would be in the children's best interests. Tracy explained the children needed permanency. Although the visit with Kautz and her husband went well, Tracy observed they were unable to engage with more than one child at a time. Tracy believed Kautz and her husband would struggle to take care of all the children's needs. Tracy added the children need permanency, and Mother and the fathers should not have any opportunity to reenter the children's lives.

{¶13} Via Judgment Entries filed September 19, 2018, the trial court terminated Mother's parental rights with respect to each of her children and granted permanent custody of the children to the Agency, finding it was in the children's best interests to do so. The trial court denied Denlinger's motion for legal custody, finding it would not be in the children's best interests to place them in the legal custody of Kautz and allowing Mother and the fathers to retain residual parental rights.

{¶14} Mother raises the following assignments of error in all four Appeals:

I. THE TRIAL COURT ERRED BOTH IN DENYING THE KAUTZES LEGAL CUSTODY MOTION AND IN GRANTING THE LICKING COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES PERMANENT CUSTODY OF L.D., S.D., S.D., AND I.D.

II. THE TRIAL COURT ERRED IN REFUSING TO APPOINT A SEPARATE ATTORNEY ADVOCATE FOR I.D. AND A.D. AND IN REFUSING TO CONSIDER THEIR WISHES DUE TO THEIR ALLEGED IMMATURITY.

III. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY REFUSING TO ALLOW THE GUARDIAN AD LITEM, WHO HAD A DUAL-APPOINTMENT, TO PARTICIPATE IN THE HEARING AS GUARDIAN AD LITEM, INSTEAD ONLY ALLOWING HER TO PARTICIPATE "AS COUNSEL FOR THE CHILDREN."

IV. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT IN RELYING ON THE GUARDIAN AD LITEM'S UNSWORN REPORT THAT CONTAINED INADMISSIBLE HEARSAY THAT WAS NOT ADMITTED INTO EVIDENCE AT THE PERMANENT CUSTODY HEARING.

V. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY FAILING TO SEPARATE THE HEARING ON LEGAL CUSTODY AND PERMANENT CUSTODY HEARINGS.

{¶15} These cases come to us on the expedited calendar and shall be considered in compliance with App. R. 11.2(C).

I

{¶16} In her first assignment of error, Mother contends the trial court erred in denying Kautz and her husband's motion for legal custody and in granting permanent custody of the children to the Agency.

{¶17} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

{¶18} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶19} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

{¶20} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

{¶21} If the child is not abandoned or orphaned, the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.

{¶22} It is well established, other than parents, no preference exists for family members in custody awards. *In re M.W.*, 8th Dist. Cuyahoga No. 96817, 2011–Ohio–

6444, ¶ 27. "[A] child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security." *In re M.S.,* 8th Dist. Cuyahoga Nos. 101693 and 101694, 2015–Ohio–1028, ¶ 11, citing *In re Adoption of Ridenour*, 61 Ohio St.3d 319, 324, 574 N.E.2d 1055 (1991). The willingness of a relative to care for a child does not alter what a court considers in determining whether to grant permanent custody. *Id.*, citing *In re A.D.*, 8th Dist. Cuyahoga No. 85648, 2005–Ohio–5441, ¶ 12. Further, a trial court is not required to favor a relative if, after considering all of the statutory factors outlined in R.C. 2151.414(D), the court finds it is in the child's best interest for the agency to be granted permanent custody. *Id.*, citing *In re B.H.*, 5th Dist. Fairfield No. 14–CA–53, 2014–Ohio–5790, ¶ 72. As the Ohio Supreme Court has instructed, in deciding what is in a child's best interests, R.C. 2151.414 does not make the availability of a relative placement an all-controlling factor; the statute does not even require the court to weigh that factor more heavily than other factors. *In re Schaefer*, 111 Ohio St.3d 498, 2006–Ohio–5513, 857 N.E.2d 532, ¶ 63.

**{¶23}** Based upon the entire record in this matter, we find the trial court's finding it was in the best interest of the children to grant permanent custody to the Agency and deny the motion for legal custody was not against the manifest weight of the evidence. The record establishes Kautz and her husband have several children of their own. They both work and Kautz is finishing her nursing degree. The guardian ad litem acknowledged Kautz and her husband are good people, but expressed serious concerns about their ability to parent their own children and Mother's children. Child 1, Child 2, and Child 3 all have special needs. Child 3, in particular, has significant special needs and requires intensive therapy and medical intervention. Child 1, Child 2, and Child 4 are bonded with

their foster family and the foster family is interested in adopting them. The foster family is willing to learn more about Child 3's needs. As the trial court noted the children had "suffered great trauma" and needed a permanent, secure home.

**{¶24}** As part of her argument, Mother takes issue with the trial court's questioning of Kautz, her husband, and the witnesses presented in support of the motion for legal custody, but lack of questioning of any of the Agency's witnesses. Mother contends the trial court had predetermined the outcome of the case. The focus of a trial court's determination of whether to place a child in the legal custody of a relative or grant permanent custody to an agency is the best interest of the child. See, e.g. *In re K.H.*, 9th Dist. Summit No. 27952, 2016-Ohio-1330, ¶ 12. We have reviewed the entire transcript of the proceedings and find nothing inappropriate in the trial court's questioning. The trial court obviously needed additional information from Kautz and her witnesses.

**{¶25}** Mother's first assignment of error is overruled.

II

**{¶26}** In her second assignment of error, Mother asserts the trial court erred in refusing to appoint a separate attorney advocate for Child 1 and Child 2 and in refusing to consider their wishes due to their alleged tender ages. Specifically, Mother argues the guardian ad litem had a conflict of interest in acting as both the guardian ad litem and attorney advocate for the children. We disagree.

**{¶27}** R.C. 2151.281(H) provides, in pertinent part:

> (H) If the guardian ad litem for an alleged or adjudicated abused, neglected, or dependent child is an attorney admitted to the practice of law

in this state, the guardian ad litem also may serve as counsel to the ward. Until the supreme court adopts rules regarding service as a guardian ad litem that regulate conflicts between a person's role as guardian ad litem and as counsel, if a person is serving as guardian ad litem and counsel for a child and *either that person or the court finds that a conflict may exist between the person's roles as guardian ad litem and as counsel, the court shall relieve the person of duties as guardian ad litem and appoint someone else as guardian ad litem for the child.* (Emphasis added.)

**{¶28}** Similarly, Juv.R. 4(C) reads:

(1) When the guardian ad litem is an attorney admitted to practice in this state, the guardian may also serve as counsel to the ward providing no conflict between the roles exist.

(2) If a person is serving as guardian ad litem and as attorney for a ward and *either that person or the court finds a conflict between the responsibilities of the role of attorney and that of guardian ad litem, the court shall appoint another person as guardian ad litem for the ward.* (Emphasis added.)

**{¶29}** In *In re Williams*, 101 Ohio St.3d 398, 2004-Ohio-1500, 805 N.E.2d 1110, ¶ 17, the Ohio Supreme Court held a trial court should determine, on a case-by-case basis, whether the child actually needs independent counsel, "taking into account the maturity

of the child and the possibility of the [GAL] being appointed to represent the child." Ohio courts have concluded "the appointment of independent counsel is warranted when a child has 'repeatedly expressed a desire' to remain or be reunited with a parent but the child's [GAL] believes it is in the child's best interest that permanent custody of the child be granted to the state." *In re J.M.* at ¶ 27, citing *In re Hilyard*, 4th Dist. Vinton Nos. 05CA600 through 05CA609, 2006-Ohio-1965, ¶ 36. However, where the child lacks the maturity to make a decision of this importance, the court has the discretion to refrain from appointing independent counsel. *In re J.M.* at *id.*, citing *In re M.W.*, 8th Dist. Cuyahoga No. 83390, 2005-Ohio-1302, ¶ 15.

{¶30} The record herein establishes the trial court specifically appointed Attorney Wells as guardian ad litem and attorney for the minor children. Thus, a dual appointment existed and the minor children were with legal representation. Mother alleges a conflict existed because Child 1 and Child 2 expressed a desire to live with Kautz and her husband.

{¶31} Child 1 was 8 years old at the time of the hearing. Child 2 was 6 years old. Child 1 unequivocally stated she did not want to live with Kautz and her husband. Although the guardian ad litem acknowledged Child 2 stated she wanted to live with Kautz and her family, the guardian noted Child 2 simply wanted to live with the family with the most Hatchimal toys. The fact Child 2 could be swayed by toys in deciding where she wanted to live belies any claims by Mother the child was mature enough to make an appropriate decision as to her best interest. We find the minor children's ages, circumstances, and statements do not reveal any conflict giving rise to any need for new,

separate counsel.  Accordingly, we find the trial court did not err in failing to appoint independent counsel for Child 1 and Child 2.

{¶32}  Mother relies on *In re Ridenour*, 11th Dist. Lake App. No. 2003-L-146, 2004-Ohio-1958, in support of her position Child 1 and Child 2 possessed the maturity to make a decision regarding with whom they wished to live and the trial court erred in failing to consider the children's wishes.  We find Mother's reliance on *Ridenour* to be misplaced. In *Ridenour*, the 11th District Court of Appeals addressed the trial court's failure to consider the express wishes of the children in a custody matter.  One of the children involved was eight years old at the time of the hearing.  The *Ridenour* Court found the eight year old was "clearly of an age when he ***might*** possess the maturity to express a meaningful opinion regarding custody.  *Id*. at para 44.  (Emphasis added).  The *Ridenour* Court did not find an eight year old was per se mature enough to express his/her custodial preference.

{¶33}  As discussed, supra, Child 1 expressed her desire to remain with her foster family.  Child 2, on the other hand, based her preference on which family had the most Hatchimal toys. We find the trial court did not dismiss the wishes of the children, but found, due to their ages, their special needs, and the trauma they suffered, they were unable "to express any meaningful custodial preference." Sept. 19, 2018 Judgment Entry at 4.

{¶34}  Mother's second assignment of error is overruled.

III

{¶35}  In her third assignment of error, Mother maintains the trial court erred in refusing to allow the guardian ad litem to participate in the hearing as the guardian ad

litem rather than solely as counsel for children despite the dual appointment. We find the record belies Mother's assertion.

{¶36} Although the trial court repeatedly asked Attorney Wells if she had any questions as "attorney for the children", Attorney Wells was called on cross examination in her capacity as guardian ad litem by Attorney Wagner, who represented Denlinger and Kautz. Attorney Wells was also called on direct examination in her capacity as guardian ad litem by the Agency. In addition, Attorney Wells examined Matthew Tracy. The questions Attorney Wells asked Tracy were consistent with questions typically asked by a guardian ad litem. The record clearly establishes Attorney Wells participated in the hearing as both the guardian ad litem and as counsel for the children.

{¶37} Mother's third assignment of error is overruled.

IV

{¶38} In her fourth assignment of error, Mother submits the trial court erred in relying on the guardian ad litem's report as substantive evidence. We disagree.

{¶39} In any action pertaining to the allocation of parental rights and responsibilities, the duties of the guardian ad litem include investigating the background of the parents and delivering a report and recommendation to the court regarding the child's best interests. *Webb v. Lane,* 4th Dist. Athens No. 99CA12, 2000 WL 290383, *2 (Mar. 15, 2000), citing *In re Baby Girl Baxter,* 17 Ohio St.3d 229, 232, 479 N.E.2d 257 (1985), and *In re Pryor,* 86 Ohio App.3d 327, 339, 620 N.E.2d 973 (4th Dist.1993). The trial court may consider the report of the guardian ad litem without the oral testimony of the investigator and despite the hearsay inherent in the report. *Id.* at *3, citing *Eitel v. Eitel,* 4th Dist. Pickaway No. 95CA11, 1996 WL 482703 (Aug. 23, 1996), and *Corrigan v.*

*Corrigan,* 4th Dist. Ross No. 1300, 1986 WL 15205 (Dec. 30, 1986). However, if the trial court chooses to consider the report of the guardian ad litem as evidence, it must afford the parties "sufficient due process protection by making the [guardian ad litem] available for cross-examination." *Id.* In other words, "in order to consider a guardian ad litem's report without violating the parties' due process rights, [the court] must afford all parties the opportunity to cross-examine the guardian ad litem regarding his or her report." *Id.*

**{¶40}** A review of the record reveals Attorney Wagner, counsel for Denlinger and Kautz, questioned Attorney Wells as to the contents of her guardian ad litem report. The Agency also questioned Attorney Wells regarding her report. Attorney Wells advised the trial court she had no changes to her report and stood by her opinion. There were no objections to the report. Accordingly, we find the trial court did not err in considering the guardian's report.

**{¶41}** Assuming, arguendo, the trial court erred in relying on the guardian ad litem's report, we find such error to be harmless. The guardian testified as to her findings at the hearing. Her testimony, in addition to the testimony of the other witnesses, supports the trial court's determination it was in the best interest of the children to grant permanent custody to the Agency.

**{¶42}** Mother's fourth assignment of error is overruled.

V

**{¶43}** In her final assignment of error, Mother argues the trial court erred in failing to separate the hearing on the motion for legal custody from the hearing on the motion for permanent custody. Mother explains, while the Rules of Evidence apply to permanent

custody hearings, the Rules do not apply to dispositional hearings, such as a hearing on a motion for legal custody.

**{¶44}** While the trial court stated its intention to conduct the hearings on both motions "simultaneously", a review of the transcript reveals there were two distinct portions of the hearing. After Attorney Wagner concluded the presentation of evidence in support of the motion for legal custody, the trial court asked counsel for the Agency, "And you want to proceed on your motion?" Tr. at 249.

**{¶45}** Mother points to numerous evidentiary rulings which she submits establish the trial court applied too strict of an evidentiary standard in some circumstances and too lenient a standard in other circumstances. Mother explains it was impossible for the parties to voice proper objections and, as a result, she was deprived of a fair hearing. Upon review of the rulings about which Mother complains, we find the trial court applied the appropriate standard in each instances. Assuming, arguendo, the trial court failed to apply the appropriate standard in the instances about which Mother complains, we find she was not prejudiced thereby.

**{¶46}** Mother's fifth assignment of error is overruled.

{¶47} The judgment of the Licking County Court of Common Pleas, Juvenile Division, is affirmed.


By: Hoffman, P.J.

Wise, John, J.  and

Baldwin, J. concur